

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00085-CR
_____

QUINTON ANTOINE BRANCH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 19765

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

An Upshur County jury convicted Quinton Antoine Branch of aggravated sexual assault of a child younger than fourteen years of age, *see* TEX. PENAL CODE ANN. § 22.021 (Supp.), and sentenced Branch to forty years' imprisonment. In three issues, Branch claims that his conviction should be reversed because the trial court erroneously allowed a witness to remain in the courtroom during trial as a support person, the State referred to other support persons present in the courtroom, and the trial court twice erred in excluding evidence. We conclude Branch failed to preserve his complaints about support persons and the exclusion of evidence, and we cannot conclude that the trial court abused its discretion in excluding other testimony. In addition, because the judgment incorrectly reflects the jury's assessment of punishment, we modify the judgment to show the jury assessed Branch's punishment, not the trial court. We further modify the judgment and bill of costs to include the $10,000.00 fine.

We affirm the judgment and bill of costs of the trial court, as modified.

## I. Background

Branch admitted that on June 8, 2023, his fingers penetrated the vagina of a thirteen-year-old girl, but he asked the jury to believe that the girl had initiated the contact in the following testimony:

> Q. [(BY THE STATE:)] [Danielle[1]] is a liar who, while you were asleep, deep in your sleep, grabbed your hand and then put your hand inside her vagina. That's your testimony to these citizens of Upshur County this morning, correct?

---

[1]We use pseudonyms for minor children involved in this case, their family members, and another victim of sexual assault. *See* TEX. CONST. art. I, § 30(a)(1) (granting a "crime victim . . . the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(a)(3).

A.      [(BY BRANCH:)]      Yes, it is.

Trial testimony established that Branch traveled from his home in Montana to visit his former neighbor, John Moore, in early June 2023. One night, after Branch and Moore had stayed up late talking, Moore went to bed, and Branch was to sleep in Moore's living room, where Moore's thirteen-year-old daughter, Danielle, was watching television. Danielle testified that Branch sexually assaulted her while she was on the couch in the living room.

Branch was arrested and indicted, and a jury trial ensued. Relevant to the issues Branch raises on appeal, Danielle testified against Branch, and, over Branch's objection, the trial court allowed Moore to be present in the courtroom during her testimony. While questioning Danielle, the State referenced several other persons in the courtroom in support of her.

Branch's wife, Valerie, testified on his behalf. Valerie attempted to testify about text messages Danielle sent to her and about her support of Branch because of how he treated Valerie after her own experience as a sexual-assault victim. The State objected to that testimony by Valerie in both instances, and the trial court sustained some of the State's objections. Branch also attempted to testify about his attitude towards sexual assault due to Valerie's experience as a sexual-assault victim, and again, the trial court sustained the State's objections.

The jury found Branch guilty of aggravated sexual assault of Danielle and sentenced him to forty years' incarceration. Branch appeals.

## II.      Branch's Complaints Regarding Support Persons Were Not Preserved for Review

In his first issue, Branch complains that it was error for the trial court to allow a support person—Danielle's father, Moore—in the courtroom during Danielle's testimony and for the

3

State to refer to other support persons present in the courtroom during its questioning of her. Branch argues that was error because the trial court did not apply the required statutory findings to allow Moore to be present as a support person and because the State alluded to Moore's presence, along with the presence of other support persons, during Danielle's examination.

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." *Garcia v. State*, 553 S.W.3d 645, 646 (Tex. App.—Texarkana 2018, pet. ref'd) (quoting TEX. R. EVID. 614) (commonly referred to as "the Rule"). Notwithstanding Rule 614 of the Texas Rules of Evidence, Article 38.074 of the Texas Code of Criminal Procedure directs a trial court, upon a motion regarding a child witness, to "allow a support person to be present . . . during the child's testimony if the court finds by a preponderance of the evidence that: (1) the child cannot reliably testify without the . . . presence of the support person . . . ; and (2) granting the motion is not likely to prejudice the trier of fact in evaluating the child's testimony." TEX. CODE CRIM PROC. ANN. art. 38.074, § 3(b); *see Garcia*, 553 S.W.3d at 647.

At the inception of Branch's trial, Rule 614 was invoked, and the trial court excluded potential witnesses from the courtroom. *See* TEX. R. EVID. 614. However, before Danielle testified, the State asked that Moore be allowed to be present in the courtroom while Danielle testified. Branch objected saying, "If [Moore] plans on testifying, Judge, if he's under the Rule, I would object to that." The State responded that Article 38.074 allowed for the presence of a support person during a child's testimony. The trial court then stated, "All right. I'll allow the exception." Branch did not comment any further. The State represented that Moore would be

4

seated in the gallery, and both parties indicated they were ready. The trial court proceeded by reconvening the jury without making any findings under Article 38.074.

Branch objected under the Rule but failed to make any other argument about Moore's presence. Branch did not respond to the State's assertion that Moore could properly be present in the courtroom as a support person under Article 38.074. Branch did not ask the trial court to make any findings under Article 38.074, nor did he object to the trial court's failure to do so.

"[I]t is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial." *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Because Branch failed to object during trial regarding the trial court's application of the procedures found in Article 38.074, Branch's complaint about the trial court's failure to make the findings required by that article is not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Smith v. State*, 491 S.W.3d 864, 875 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (defendant did not preserve argument that trial court failed to adhere to procedures set out in Article 38.074 when he objected to the testimony at trial as "overly prejudicial"); *Lambeth v. State*, 523 S.W.3d 244, 247 (Tex. App.—Beaumont 2017, no pet.) (defendant "never asked trial court to provide more specific findings" under Article 38.074, thus complaints were not preserved for appellate review). An objection under Rule 614 is an objection to the presence of witnesses in the courtroom and does not preserve a complaint that the requirements of Article 38.704 have not been satisfied.[2]

---

[2]Further, we note that "the ability of crime victims and particular witnesses to participate in certain criminal justice proceedings" was strengthened with the passage of certain 2001 legislation that included Article 36.03 of the Texas Code of Criminal Procedure. *Garcia*, 553 S.W.3d at 647; *see* TEX. CODE CRIM. PROC. ANN. art. 36.03 (Supp.). Under Article 36.03, "legal guardians of crime victims should generally be permitted to stay in the courtroom."

Branch also complains that the State referred to other support persons present in the courtroom during Danielle's examination. The State asked Danielle, "[I]s your father seated behind me here along with grandparents, other friends and family members?" Danielle responded, "Yes, sir." The following exchange took place:

> Q.    [(BY THE STATE:)]    And who is [Jessica] since you have mentioned her name?
>
> A.    [(BY DANIELLE:)]    My best friend.
>
> Q.    And is she here today?
>
> A.    Yes.
>
> Q.    Supporting you?
>
> A.    Yes.

Neither the record nor Branch's briefing indicates that Branch objected to this questioning.

A party cannot raise a complaint on appeal "unless the record shows that the party made a timely objection or motion stating the grounds for the requested ruling . . . [and] obtain[ed] a ruling from the trial court or object[ed] to the trial court's refusal to rule on the objection or motion." *Null v. State*, 690 S.W.3d 305, 318 (Tex. Crim App. 2024) (citation omitted) (citing TEX. R. APP. P. 33.1(a)). "Generally, to preserve error in the admission of evidence, a party must make a proper objection, get a ruling on that objection, and continue to object each time the allegedly inadmissible evidence—or other evidence proving the same underlying fact—is

---

*Parks v. State*, 463 S.W.3d 166, 174 n.6 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 36.03(a)). The trial court had no authority to exclude Moore, as Danielle's legal guardian, without a determination that his testimony would have been materially affected if he heard Danielle's testimony at trial. *See Garcia*, 553 S.W.3d at 647 (quoting *Wilson v. State*, 179 S.W.3d 240, 248 (Tex. App.—Texarkana 2005, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 36.03)). Under Article 36.03, the burden to make an offer of proof to justify the exclusion of a qualifying witness is on the party seeking exclusion of the witness. *Id.*

offered." *Redmond v. State*, 629 S.W.3d 534, 547 (Tex. App.—Fort Worth 2021, pet. ref'd) (citing *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)).

Branch did not object to the admission of Danielle's testimony regarding persons in the courtroom who were providing her support. He thus did not preserve his complaints about Danielle's testimony for appeal.

We overrule Branch's first issue.

## III. Branch's Complaint Regarding Exclusion of Text Messages Was Not Preserved

In his second issue, Branch complains that it was error for the trial court to exclude certain text messages between Valerie and Danielle. Branch called Valerie to testify on his behalf. During Valerie's testimony, Branch prepared to question Valerie about certain text messages, but before he questioned her, the State objected and requested a hearing outside the presence of the jury. Outside the presence of the jury, the State objected based on hearsay to Branch questioning Valerie about her text messages with Danielle. The following exchange then took place:

> Q. [(COUNSEL FOR BRANCH:)] Okay. What's Defense Exhibit No. 3?
>
> A. [(BY VALERIE:)] It's a text message that I had with [Danielle]. This was just our normal communication. It's very random, but I would just check in on her because I cared about her.
>
> Q. Okay.
>
> A. Do you want me to flip through it?
>
> Q. Yes, please.
>
> A. (Witness complies.) Am I supposed to say what I'm seeing?

7

Q.   Well, just look at all the pages.

A.   Okay.  (Witness complies.)

Q.   Does that accurately reflect a conversation that you had with [Danielle]?

A.   Yes, sir.

At that point, Branch stopped questioning Valerie and argued to the trial court that the messages were not hearsay because "[Danielle] testified, she is here.  So this is not an out-of-court statement from someone who is not available. . . . [T]hey can call her to verify this."  The State responded with an argument about hearsay, and the trial court sustained the State's objection.

> A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

TEX. R. EVID. 103(a)(2).  "In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with rule 103 of the Texas Rules of Evidence by making an offer of proof, which sets forth the substance of the proffered evidence."  *Mata v. State*, 517 S.W.3d 257, 264 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 103(a)(2))); *see Kamanga v. State*, 502 S.W.3d 871, 877 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing *Mays*, 285 S.W.3d at 890).  "The offer of proof may consist of a concise statement by counsel or it may be in question and answer form."  *Mata*, 517 S.W.3d at 264 (citing *Mays*, 285 S.W.3d at 889).  "If in the form of a statement, the proffer 'must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so

that the trial court can determine whether the evidence is relevant and admissible." *Id.* (quoting *Mays*, 285 S.W.3d at 890). "The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009).

When Branch questioned Valerie outside the presence of the jury, he established only that the exhibit he sought to enter contained text messages between Danielle and Valerie in which Valerie was "check[ing] in on [Danielle] because [she] cared about her," and that the text messages "accurately reflect[ed] a conversation that [Valerie] had with [Danielle.]" Branch did not question Valerie about the contents of the texts themselves, nor did he offer the pre-marked exhibit 3 into evidence. On appeal, Branch states, "Clearly, the defense was attempting to elicit testimony from [Valerie] regarding how she perceived [Danielle's] state of mind, which would not be a statement offered for the truth of the matter asserted." Branch also claims that the text messages "would have . . . provided additional information for the jury to assess the credibility of [Danielle]."

Contrary to Branch's assertions on appeal, it is not at all clear from the record what the substance of the text messages or Valerie's testimony about them would have been. Faced with the trial court's exclusion of Valerie's testimony, Branch's failure to "'perfect a bill' or to make a statement of what he would prove" with the text messages was a failure to meet the requirement of Rule 103(a)(2). *Id.* at 171. "Because the substance of the evidence has not been made known to us from the record, and because the substance of the evidence is not apparent to us from the record, [Branch] has failed to comply with Rule 103(a)(2)." *Id.* "Thus, we are

9

unable to judge the admissibility of the excluded evidence or determine whether the trial court abused its discretion by excluding it." *Id.*; *compare Kamanga*, 502 S.W.3d at 877 (defendant preserved error with a "bare-bones" summary of the testimony he expected to elicit when he stated that the witness was going to testify for impeachment purposes as to a threat made against him by the complainant) *with Holmes*, 323 S.W.3d at 170–71 (defendants demonstrated intent to question the science of a breathalyzer machine did not preserve error because it failed to provide a reasonably specific summary of the evidence offered).

Further, even if Branch had preserved error by putting the substance of the excluded text messages on the record, the trial court did not err in sustaining the State's hearsay objection. "Hearsay is . . . an out-of-court statement, whether oral or written, that is offered into evidence for the truth of the matter asserted." *Grimm v. State*, 496 S.W.3d 817, 826 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing TEX. R. EVID. 801(d)); *see Morrow v. State*, 486 S.W.3d 139, 158 n.6 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting TEX. R. EVID. 801(d)). Generally, hearsay is inadmissible. *Morrow*, 486 S.W.3d at 158 n.6 (citing TEX. R. EVID. 802).

The State objected to the text messages between Valerie and Danielle as hearsay and argued that the messages were being offered for the truth of the matter asserted, which was "[Valerie's] relationship with [Danielle]." Branch argued that because Danielle was present, the text messages were "not an out-of-court statement from someone who is not available." Whether the text messages were hearsay did not turn on Danielle's availability, and Branch did not argue that the messages were *not* being offered for the truth of the matter asserted (indeed, as noted above, Branch did not specify why the messages were being offered at all). Nor did Branch

argue that any hearsay exception applied. *See Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008) ("Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character.") Had Branch preserved error by making a record of what testimony he intended to elicit from Valerie, the trial court would not have abused its discretion in sustaining the State's hearsay objection to the admission of the text messages or testimony about them in response to Branch's deficient hearsay arguments.

We overrule Branch's second issue.

## IV. Sustaining the State's Rule 608(b) Objection Was Not an Abuse of Discretion

In his third issue, Branch complains that it was error for the trial court to sustain the State's Rule 608(b) objections. Rule 608(b) of the Texas Rules of Evidence provides that, except in certain circumstances not applicable here, "a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b).

### A. Standard of Review

"We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard." *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "A trial judge abuses [his] discretion when [his] decision falls outside the zone of reasonable disagreement." *Id.* at 83. "Before a reviewing court may reverse the trial court's decision, 'it

must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor*, 268 S.W.3d at 579).

"An appellate court reviews a trial judge's determination on admissibility of evidence for an abuse of discretion." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). "Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Id.* (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery v. State*, 810 S.W. 2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g))); *Eichelberger v. State*, 232 S.W.3d 225, 226–27 (Tex. App.–Fort Worth 2007, pet. ref'd).

"An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case." *Bluntson v. State*, 728 S.W.3d 87, 108 (Tex. Crim. App. 2025), *cert. denied*, No. 25-6476, 2026 WL 795116 (U.S. Mar. 23, 2026) (mem. op.) (citing *Henley*, 493 S.W.3d at 93).

**B.     Analysis**

Branch complains of two instances in which the trial court sustained the State's objections to testimony he was attempting to elicit. Regarding the first instance, Branch argues that "the proposed line of questioning went to [Valerie's] belief in [Branch's] innocence." The following exchange took place:

> Q.     [(COUNSEL FOR BRANCH:)]     . . . [W]ith this allegation that has brought . . . Quinton here, is that hard for you?
>
> A.     [(BY VALERIE:)]     Yes, sir.
>
> Q.     Okay.  Why is that hard for you?

A.    Because what [Danielle] is saying Quinton did, I know he would never do because this happened to me when I was in college and we were engaged.  And it almost ruined—

[(BY THE STATE)]:    Objection, Your Honor.  It's nonresponsive to the question.

THE COURT:    Sustained.

Q.    [(COUNSEL FOR BRANCH:)]    Okay.  So this happened to you?

A.    Yes, sir.

[(BY THE STATE)]:    Objection, relevance.  That goes to nothing that this jury is to decide on the elements of this indictment.

[(COUNSEL FOR BRANCH)]:    Judge, it goes to her believability in Quinton.

THE COURT:    Overruled.

Q.    [(COUNSEL FOR BRANCH:)]    Did this event affect your relationship?

A.    [(BY VALERIE:)]    Yes, sir.

Q.    Could you support somebody that you thought could do this to someone else?

A.    No, sir.

Q.    With your relationship with [Danielle], . . .

A.    Yes, sir.

Q.    -- when you and Quinton would go over to their house, how would she respond to Quinton?

[(BY THE STATE)]:    Objection, Your Honor, that calls for specific instances of conduct which is a violation of Rule 608(b).

13

THE COURT:          Sustained.

At this point, the State approached the bench and requested a hearing outside the presence of the jury regarding the text messages discussed above. Branch gave no response to the State's Rule 608(b) objection, nor did he make any statement regarding the content of the testimony he sought to elicit from Valerie on this subject.

At trial, Branch argued that this line of questioning went to Valerie's "believability" in him. On appeal, Branch phrases this as evidence of "his sensitivity toward individuals who had been sexually assaulted." But a review of the trial court's rulings during this exchange demonstrates that the trial court overruled the State's objection to the testimony that Branch explained as going to Valerie's believability in him, and Branch continued to question her on that subject, asking and receiving responses as to whether the event affected their relationship and whether she could support somebody who assaulted someone else.

As shown in the testimony excerpt above, and contrary to Branch's argument on appeal, the State's Rule 608(b) objection did not deal with a question about Valerie's believability in Branch. Rather, the objection was made when Branch questioned Valerie about Danielle's response to Branch when he visited Danielle's family's home. And as with his complaint about the text messages addressed above, Branch did not preserve this error for appeal. Branch did not "perfect a bill" or make a statement of what he would prove with any testimony regarding Danielle's response to Branch when he visited Danielle's family's home. *See Holmes*, 323 S.W.3d at 171. "Because the substance of the evidence has not been made known to us from the record, and because the substance of the evidence is not apparent to us from the record, [Branch]

14

has failed to comply with Rule 103(a)(2)." *Id.* Again, regarding Valerie's excluded testimony after the State's 608(b) objection, "we are unable to judge the admissibility of the excluded evidence or determine whether the trial court abused its discretion by excluding it." *Id.*

The second sustained objection, of which Branch complains, arose during Branch's testimony:

> Q.    [(COUNSEL FOR BRANCH:)]    So when you were engaged to [Valerie] you went through something like this with her?
>
> A.    [(BY BRANCH:)]    We did.
>
> [(BY THE STATE)]:    Objection, relevance.
>
> THE COURT:    [Counsel for Branch], any response?
>
> [(COUNSEL FOR BRANCH)]:    Judge, I think with some leeway -- the relevance is if he went through this why would he ever put someone else through that.
>
> [(BY THE STATE)]:    Then that's a Rule 608(b), specific instance of conduct, which is improper and it's irrelevant because it has nothing to do with this jury, what they must find in this case.
>
> THE COURT:    The objection is sustained.
>
> Q.    [(COUNSEL FOR BRANCH:)]    Quintion, based upon your life, would you ever do this to somebody.
>
> A.    [(BY BRANCH:)]    I would not.

Although Branch complains of the trial court's ruling on this testimony based on Rule 608(b), the record demonstrates that the State objected based on relevance in addition to Rule 608(b). The trial court's ruling may have been based on the relevance objection, of which Branch has not complained on appeal. *See* TEX. R. APP. P. 38.1(f). Because the trial court may

15

have based its ruling on the State's relevance objection, of which Branch did not complain, Branch waived error as to this ruling.

Moreover, even assuming that the trial court improperly excluded testimony relating to Valerie's own sexual assault and her resulting "believability" in Branch, Branch has not demonstrated harm in the exclusion of the testimony. As evidenced in the testimony excerpts above, Valerie testified that this happened to her, it affected her relationship with Branch, and she could not support someone she thought did the same thing to someone else. Further, Branch testified that he knew what Moore had been through, since he had been through something similar with Valerie while they were engaged, and, based upon his life, he would not ever do this to someone else. Considering that this testimony was heard by the jury, and the fact that Branch did not present the trial court with the substance of any additional testimony that he would have presented had the trial court not ruled against him, we cannot conclude that Branch's substantial rights have been affected. *See* TEX. R. APP. P. 44.2.

We overrule Branch's third issue.

## V. Modification of Judgment

The trial court's judgment states that Branch's punishment was assessed by the trial court. However, the record reflects that the jury assessed punishment. Further, the trial court's judgment assesses no fine against Branch, but the record reflects that the jury included a $10,000.00 fine as part of Branch's punishment. The fine imposed by the jury is part of the punishment imposed by the jury and should be reflected in the judgment. *Ette v. State*, 559 S.W.3d 511, 515 (Tex. Crim. App. 2018) ("[T]he jury verdict that was read aloud in appellant's

16

presence correctly included the $10,000 fine, and the trial court was required to include that fine in the written judgment."). We have the authority to modify the trial court's judgment to reflect these facts. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

Accordingly, we modify the judgment and bill of costs as stated below.

## VI. Conclusion

We modify the trial court's judgment to reflect that the jury assessed punishment. We further modify the trial court's judgment, and the bill of costs, to include a fine of $10,000.00. As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: December 3, 2025
Date Decided: May 26, 2026

Do Not Publish

17